[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11270
_____

D.C. Docket No. 6:12-cv-00701-CEH-KRS


RAQUEL PASCOAL WILLIAMS,

                                                            Plaintiff-Appellant,

versus

SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY,
DIRECTOR, US CITIZENSHIP AND IMMIGRATION SERVICES,

                                                            Defendants-Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 17, 2014)

Before MARTIN and ANDERSON, Circuit Judges, and HUCK,[*] District Judge.

MARTIN, Circuit Judge:

_____
[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

Raquel Pascoal Williams appeals the District Court's grant of summary judgment in favor of the U.S. Department of Homeland Security (DHS).  The District Court interpreted parts of the Immigration and Nationality Act (INA) to prevent Ms. Pascoal from adjusting her immigration status to become a legal permanent resident.  Her appeal raises a novel issue of statutory interpretation: whether the remarriage bar in the second sentence of the "immediate relatives" definition in 8 U.S.C. § 1151(b)(2)(A)(i) applies to Ms. Pascoal's renewed application to adjust her status under the recently enacted § 1154(*l*).[1]  After careful review and with the benefit of oral argument, we find that it does not.  We therefore reverse the grant of summary judgment and remand for entry of judgment in favor of Ms. Pascoal.

## I. BACKGROUND

### A.  FACTUAL BACKGROUND

Ms. Pascoal is a native and citizen of Brazil.  On January 11, 2002, she married Derek Williams, a U.S. citizen.  On December 19, 2002, Mr. Williams filed an I-130 beneficiary-petition on Ms. Pascoal's behalf.  An I-130 beneficiary-petition allows a U.S. citizen to have a qualifying alien relative classified as an "immediate relative" under the INA so that the alien relative may then file an application to adjust their immigration status.  8 U.S.C. § 1154(a)(1)(A)(i); 8

---

[1] We italicize the lowercase letter "*l*" in our references to § 1154(*l*) to distinguish it from the number "1."

C.F.R. § 204.1(a)(1).  At the time, Ms. Pascoal was an "immediate relative" of Mr. Williams, according to the first sentence of the INA's definition, because she was his spouse.  8 U.S.C. § 1151(b)(2)(A)(i).  Ms. Pascoal also filed her own I-485 application to adjust her status to lawful permanent resident and Mr. Williams filed his affidavit in support.

Mr. Williams unexpectedly died on September 17, 2003, before DHS made a final decision on the I-130 beneficiary-petition and I-485 application.  Soon after Mr. Williams died, DHS denied Ms. Pascoal's application to adjust her status.  The denial stated that because of Mr. Williams's death, Ms. Pascoal was no longer classified as an "immediate relative" of a U.S. citizen and therefore she could not adjust her status on that basis.

DHS's December 23, 2003 letter also told Ms. Pascoal that its decision did not preclude her from filing an I-360 self-petition.  An I-360 self-petition allows a widow or widower of a U.S. citizen who meets the requirements of the second sentence of the "immediate relatives" definition to file for adjustment of status on their own behalf, which Ms. Pascoal did on July 16, 2004.  8 U.S.C. § 1154(a)(1)(A)(ii); 8 C.F.R. § 204.1(a)(2).  At that time, the second sentence of the "immediate relatives" definition required the alien spouse to have been married to the U.S. citizen "for at least 2 years at the time of the citizen's death."  8 U.S.C. § 1151(b)(2)(A)(i) (2006).  Because she had not been married to Mr. Williams for

3

at least two years before he died, DHS also denied Ms. Pascoal's I-360 self-petition.

On August 8, 2009, Ms. Pascoal remarried to Noel Wells. Ms. Pascoal and Mr. Wells were only married for a short time and were formally divorced on April 8, 2010.

After her divorce, Ms. Pascoal sought to reopen her original I-130 beneficiary-petition that Mr. Williams had filed on her behalf before he died. Her motion was based on a newly enacted provision at 8 U.S.C. § 1154(*l*), which allowed people like Ms. Pascoal to reopen an earlier filed I-130 beneficiary-petition that had been denied because of the death of the qualifying U.S. citizen relative. However, DHS denied Ms. Pascoal's motion to reopen based on her marriage to Mr. Wells, relying on the remarriage bar in the second sentence of the "immediate relatives" definition. 8 U.S.C. § 1151(b)(2)(A)(i).

## B.  PROCEDURAL HISTORY

On May 9, 2012, Ms. Pascoal filed this action in the United States District Court for the Middle District of Florida challenging DHS's decision that her second marriage barred her from adjusting her status under § 1154(*l*). Because there were no material factual disputes, the parties quickly filed cross-motions for summary judgment.

The District Court denied Ms. Pascoal's motion and granted judgment in favor of DHS.  The District Court found that the "immediate relatives" definition in 8 U.S.C. § 1151(b)(2)(A)(i) is specifically referenced in § 1154(*l*) and explicitly limits an alien widow's right to acquire immigration benefits based on a first marriage after the widow has remarried.  The District Court rejected Ms. Pascoal's argument that the second sentence of that definition—which contains the remarriage bar—only applies to I-360 self-petitions, not I-130 beneficiary-petitions.  The District Court also was not persuaded by case law from outside our Circuit that held the first sentence of the "immediate relatives" definition in § 1151(b)(2)(A)(i) is not modified by the second sentence, because those decisions analyzed the application of the two-year marriage requirement, rather than the remarriage bar at issue here.  Ms. Pascoal then filed this appeal.

## II.  JURISDICTION

This Court has jurisdiction over the District Court's summary judgment decision pursuant to 28 U.S.C. § 1291.  The District Court properly exercised subject matter jurisdiction over this case under 28 U.S.C. § 1331, because Ms. Pascoal is making her federal claims under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

Our jurisdiction over agency actions is limited—particularly those taken pursuant to the INA.  In determining whether we have jurisdiction, we make two further inquiries.  First, we consider whether jurisdiction is proper under the APA.  Jurisdiction over an agency action is permissible under § 704 of the APA where: (1) the action marks the consummation of the agency's decision-making process, and is not tentative or interlocutory; and (2) the action determines rights or obligations, or is one from which legal consequences will flow.  Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1145 (11th Cir. 2009).

This appeal satisfies both requirements.  DHS's denial of Ms. Pascoal's application for status as a permanent resident was a final decision.  And the decision determined Ms. Pascoal's statutory eligibility to adjust her status, having the legal consequences of revoking her employment authorization and ending her permission to be present in the United States.

We next consider jurisdiction under the INA.  Normally discretionary decisions or actions of the Attorney General are not subject to judicial review. 8 U.S.C. § 1252(a)(2)(B)(ii).  Despite this general limitation, we have jurisdiction over Ms. Pascoal's appeal because it involves a purely legal question of statutory eligibility, not a discretionary agency action.  See, e.g., Mejia Rodriguez, 562 F.3d at 1142–45.

## III.  DISCUSSION

## A.  STANDARD OF REVIEW

We review de novo the District Court's interpretation and application of statutory provisions, as well as any grant of summary judgment based on that interpretation.  Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs., 701 F.3d 356, 361 (11th Cir. 2012).  When reviewing an agency's construction of a statute that it administers, we first determine whether Congress has directly spoken to the question at issue.  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 2781 (1984).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842–43, 104 S. Ct. at 2781.  "As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear."  Silva-Hernandez, 701 F.3d at 361 (citation omitted).

"[I]f the statute is silent or ambiguous with respect to the specific issue," we turn to the second step, which requires us to decide whether the agency's regulation "is based on a permissible construction of the statute."  Chevron, 467 U.S. at 843, 104 S. Ct. at 2782.  To uphold the agency's interpretation under this inquiry, we "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have

7

reached if the question initially had arisen in a judicial proceeding." Id. at 843 n.11, 104 S. Ct. at 2782 n.11.  All we must decide is whether the agency "has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Lopez v. Davis, 531 U.S. 230, 242, 121 S. Ct. 714, 722–23 (2001) (quoting NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257, 115 S. Ct. 810, 813–14 (1995)).

## B.  STATUTORY FRAMEWORK

This case involves the interpretation of, and relationship between, three subsections of the INA.

### 1.  Beneficiary- and Self-Petition Procedures

The INA establishes various petitioning procedures for an alien to apply for U.S. immigration status.  8 U.S.C. § 1154.  The two petitioning procedures that are relevant to this case are: (1) § 1154(a)(1)(A)(i), which allows a U.S. citizen to petition for an alien who is classified as an "immediate relative" (I-130 beneficiary-petition);  and (2) § 1154(a)(1)(A)(ii), which allows an alien spouse of a deceased U.S. citizen to self-petition if he or she meets the requirements described in the second sentence of the INA's "immediate relatives" definition (I-

360 self-petition).[2]  The original I-130 beneficiary-petition filed by Mr. Williams

on Ms. Pascoal's behalf falls under the first clause, § 1154(a)(1)(A)(i).

## 2.  "Immediate Relatives" Definition

The term "immediate relatives" used in the petitioning procedures described

above is defined in a separate section of the INA, 8 U.S.C. § 1151(b)(2)(A)(i).

This subsection defines who may be classified as an "immediate relative" and sets

out the requirements for an alien spouse to remain classified as an "immediate

relative" after the death of his or her U.S. citizen spouse.  Before 2009, the INA

defined "immediate relatives" as follows:

> Immediate relatives. For purposes of this subsection, the term
> "immediate relatives" means the children, spouses, and parents of a
> citizen of the United States, except that, in the case of parents, such
> citizens shall be at least 21 years of age. In the case of an alien who
> was the spouse of a citizen of the United States for at least 2 years at
> the time of the citizen's death and was not legally separated from the
> citizen at the time of the citizen's death, the alien (and each child of
> the alien) shall be considered, for purposes of this subsection, to
> remain an immediate relative after the date of the citizen's death but
> only if the spouse files a petition under section 1154(a)(1)(A)(ii) of
> this title within 2 years after such date and only until the date the
> spouse remarries. For purposes of this clause, an alien who has filed a
> petition under clause (iii) or (iv) of section 1154(a)(1)(A) of this title
> remains an immediate relative in the event that the United States

---

[2] DHS has a regulation that automatically converts an I-130 beneficiary-petition to an I-360 self-petition if the U.S. citizen petitioner dies before a final agency decision on the original I-130 beneficiary petition and corresponding I-485 application.  8 C.F.R. § 204.2(i)(1)(iv) ("A currently valid visa petition previously approved to classify the beneficiary as an immediate relative as the spouse of a United States citizen must be regarded, upon the death of the petitioner, as having been approved as a Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant. . .").

citizen spouse or parent loses United States citizenship on account of the abuse.

8 U.S.C. § 1151(b)(2)(A)(i) (2006).

Although this definition is set forth in one unbroken paragraph, the individual sentences are sometimes referred to separately.  For example, the statutory section describing the I-360 self-petition procedure for alien spouses whose U.S. citizen spouses have died states that:

> An alien spouse described in the second sentence of section 1151(b)(2)(A)(i) of this title also may file a petition with the Attorney General under this subparagraph for classification of the alien (and the alien's children) under such section.

8 U.S.C. § 1154(a)(1)(A)(ii) (emphasis added).  As explained below, the parties here dispute whether the definition must be applied in its entirety or whether only the first sentence applies to Ms. Pascoal's application.

3.  Section 1154(*l*)

On October 28, 2009, two amendments affecting the petitioning procedures for alien spouses became law.  The first amendment struck the two-year marriage requirement in the second sentence of § 1151(b)(2)(A)(i)'s "immediate relatives" definition.  See DHS Appropriations Act of 2010, Pub. L. No. 111-83, § 568(c)(1), 123 Stat. 2142, 2186.

The second amendment created 8 U.S.C. § 1154(*l*).  This new subsection provided, among other things, retroactive relief for people, like Ms. Pascoal, whose

I-130 beneficiary-petitions filed by their U.S. citizen spouses had already been denied because their citizen spouse had died before DHS had reached its final decision.  DHS Appropriations Act § 568(d).

## C.  ANALYSIS

The agency decision at issue in this appeal is DHS's February 23, 2012 denial of Ms. Pascoal's motion to reopen, pursuant to the new § 1154(*l*), her status-adjustment application based on the I-130 beneficiary-petition Mr. Williams filed on her behalf before his death.  DHS argues that in order to determine whether Ms. Pascoal is eligible under the INA to adjust her status it must apply both the first and second sentences of the "immediate relatives" definition in § 1151(b)(2)(A)(i).  And, says DHS, the plain language of the second sentence of the definition explicitly states that a widow or widower will cease being an "immediate relative" when he or she remarries.  Based on this reasoning, DHS concludes that Ms. Pascoal's intervening remarriage to Mr. Wells made her statutorily ineligible to adjust her status.  DHS also notes that the "immediate relatives" definition is expressly referenced in the new § 1154(*l*) without any statement that the incorporation is limited to the definition's first sentence.

Ms. Pascoal argues that the plain language of § 1154(*l*) supports the opposite conclusion.  She claims § 1154(*l*) establishes eligibility based on the applicant's relationship "immediately prior to the death" of the qualifying relative.  Because of

11

this language, she argues the remarriage bar in the second sentence of the "immediate relatives" definition, which defines whether an alien spouse is an "immediate relative" <u>after</u> the citizen spouse has died, does not apply to her application. The distinction between beneficiary- and self-petitions made in the statutory structure of the INA also, argues Ms. Pascoal, supports her position.

After reviewing the text of the sections of the INA at issue here, as well as its overarching statutory structure, we conclude that the plain meaning of the statute is clear and supports Ms. Pascoal's position.

First, as Ms. Pascoal argues, the text of § 1154(*l*) refers to "an alien who, <u>immediately prior to the death</u> of his or her qualifying relative, <u>was</u>—(A) the beneficiary of a pending or approved petition for classification as an immediate relative." 8 U.S.C. § 1154(*l*)(2) (emphasis added). This plain language directs us to the moment "immediately prior to the death" of the qualifying relative. <u>Id.</u> The statutory text also uses the past tense "was" in describing when the "immediate relatives" definition should be applied. <u>Id.</u> Therefore in Ms. Pascoal's case, she qualifies to have the I-130 beneficiary-petition Mr. Williams filed on her behalf adjudicated because "immediately prior to the death" of Mr. Williams she "was" an "immediate relative," a spouse as defined by the first sentence of § 1151(b)(2)(A)(i).

12

Second, the lack of an explicit remarriage bar in § 1154(*l*) also demonstrates that Congress did not intend one to apply. The text of the actual 2009 amendments, in their bill form, demonstrates this point even more clearly. Public Law 111-83 contains the two relevant amendment sections, §§ 568(c) and (d), which together are only a page and a half long. See DHS Appropriations Act § 568(c)–(d). Section 568(c) addresses the amendments to the "immediate relatives" definition in § 1151(b)(2)(A)(i). It struck the two-year marriage requirement from the second sentence of § 1151(b)(2)(A)(i) and specifically reiterated in its text the remarriage bar. Id. § 568(c)(2)(B)(ii)(III).

Section 568(d) created the new § 1154(*l*). It provided, among other things, a retroactive means for individuals like Ms. Pascoal to benefit from the change in the law. Id. § 568(d). Notably, although Congress passed these two short amendments together, § 568(d) does not contain a remarriage bar. This omission counsels against reading one into § 1154(*l*), because "[w]hen Congress includes language in one statutory provision but not in another related provision, that too has meaning." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 763 (11th Cir. 2010).

This analysis of the text of § 1154(*l*) undermines DHS's argument that § 1154(*l*) specifically incorporates § 1151(b)(2)(A)(i)'s "immediate relatives" definition in its entirety. Because the text of § 1154(*l*) directs us to apply the "immediate relatives" definition prior to the death of the citizen spouse, we never

13

reach the second sentence of § 1151(b)(2)(A)(i), which applies after the citizen spouse's death.

Third, the INA's overarching statutory structure supports the interpretation that the first and second sentences of § 1151(b)(2)(A)(i)'s "immediate relatives" definition apply separately to beneficiary- and self-petitions respectively.  DHS's contrary argument, that Ms. Pascoal's interpretation requires a "complicated" or "convoluted" reading of the broader statute, is persuasive at first blush.  Ms. Pascoal's approach does require us to separate the undivided "immediate relatives" definition in § 1151(b)(2)(A)(i) into distinct sentences and then apply those sentences separately to different types of petitions.

However, the express references back and forth between the "immediate relatives" definition in § 1151(b)(2)(A)(i) and the different types of petitioning procedures in § 1154(a)(1)(A) support Ms. Pascoal's argument.  Section 1154(a)(1)(A) clearly sets out—in two separate subsections—two distinct paths for alien spouses to adjust their immigration status.  8 U.S.C. § 1154(a)(1)(A)(i)–(ii).  In describing these two paths, Congress itself made an express first-sentence versus second-sentence differentiation in the statutory language.  Id. § 1154(a)(1)(A)(ii) (discussing the I-360 self-petitioning procedure for "[a]n alien spouse described in the second sentence of section 1151(b)(2)(A)(i)" (emphasis added)).  In a similar fashion, the third sentence of § 1151(b)(2)(A)(i)'s

"immediate relatives" definition expressly refers back to the third and fourth types of petitioning procedures set forth in § 1154(a)(1)(A)(iii)–(iv). Id. § 1151(b)(2)(A)(i) ("For purposes of this clause, an alien who has filed a petition under clause (iii) or (iv) of section 1154(a)(1)(A) of this title remains an immediate relative in the event that the United States citizen spouse or parent loses United States citizenship on account of the abuse."). This overarching statutory structure therefore offers further support for limiting § 1154(*l*)'s incorporation of the "immediate relatives" definition to the first sentence of § 1151(b)(2)(A)(i), which, like § 1154(*l*), applies to I-130 beneficiary-petitions.

Our conclusion here is consistent with that of the majority of Circuit Courts of Appeals that have analyzed the relationship between the first and second sentences of the "immediate relatives" definition, albeit before the 2009 amendments that added § 1154(*l*). The First, Sixth, and Ninth Circuits all found that the first two sentences of § 1151(b)(2)(A)(i)'s "immediate relatives" definition do not modify one another, but rather apply separately to beneficiary- and self-petitions. Lockhart v. Napolitano, 573 F.3d 251, 256 (6th Cir. 2009); Taing v. Napolitano, 567 F.3d 19, 26 (1st Cir. 2009); Freeman v. Gonzales, 444 F.3d 1031, 1039 (9th Cir. 2006).[3]

---

[3] The Third Circuit, the only Circuit to hold that the two sentences of § 1151(b)(2)(A)(i) do modify each other, relied heavily on verb tense in reaching its conclusion. Robinson v. Napolitano, 554 F.3d 358, 364 (3d Cir. 2009). Section 1154(*l*) was not at issue in that case, but

Although the District Court here found these cases unpersuasive, insofar as they did not specifically address the remarriage bar, we disagree. These sister Circuits' conclusion—that the two sentences do not modify one another—speaks to the statutory interpretation issue here, even if those Courts were considering a different clause of the second sentence (the two-year marriage requirement versus the remarriage bar). We do not see any substantive distinction between the two-year marriage requirement and the remarriage bar, nor has DHS offered any. Congress's passage of § 1154(*l*), without an express remarriage bar, and its directive that certain I-130 beneficiary-petitions "shall" be "adjudicated notwithstanding the death of the qualifying relative" only strengthens the persuasiveness of these Courts' reasoning for Ms. Pascoal's case.

DHS's argument that the second sentence of the "immediate relatives" definition necessarily applies to Ms. Pascoal appears to rely in part on its own policy to convert pending I-130 beneficiary-petitions to I-360 self-petitions upon the death of the citizen spouse. 8 C.F.R. §§ 204.2(i)(1)(iv), 205.1(a)(3)(i)(C)(1). The effect of this automatic-conversion policy is that a petition that began as an I-130 beneficiary-petition is treated as an I-360 self-petition. As a result the petition necessarily becomes subject to the remarriage bar in the second sentence of

Congress's use of the past tense in § 1154(*l*) would seem to argue for the opposite result in Ms. Pascoal's case even under the Third Circuit's logic in <u>Robinson</u>.

16

§ 1151(b)(2)(A)(i)'s "immediate relatives" definition, because the I-360 self-petition procedure in § 1154(a)(1)(A)(ii) is expressly limited to "[a]n alien spouse described in the second sentence."

However, DHS's automatic-conversion policy is a procedural rule and is not based on any statutory language authored by Congress.  Whether or not the policy was permissible prior to the amendment adding § 1154(*l*), the policy now conflicts with § 1154(*l*)'s text, which provides that an alien spouse "shall have such petition described in paragraph (2) [which describes I-130 beneficiary-petitions] . . . adjudicated notwithstanding the death of the qualifying relative."  8 U.S.C. § 1154(*l*)(1).  Because of this conflict, DHS's automatic-conversion policy "is not one that Congress would have sanctioned," and we do not owe any deference to it or its effect in reaching our conclusion in this case.  See Chevron, 467 U.S. at 845, 104 S. Ct. at 2783 (citation omitted).

Finally, we note that while the specific circumstances of Ms. Pascoal's case require us to consider a status-adjustment application based on an original I-130 beneficiary-petition filed many years ago, the practical impact of § 1154(*l*) is that the number of individuals in Ms. Pascoal's same situation will be limited, or even cease to exist, in the future.  Regardless, our interpretation today is true to the intent of Congress that I-130 beneficiary-petitions be "adjudicated notwithstanding the death of the qualifying relative."  8 U.S.C. § 1154(*l*).  That a spouse eventually

17

remarries does nothing to impugn the validity of the original I-130 beneficiary-petition or the first marriage, and leaves the surviving spouse in the same position she would have been but for the untimely passing of her husband, an event that is beyond her control.  Because of the practical impact of § 1154(*l*) as well as Congressional intent voiced in its text, we do not share DHS's concern, echoed by the District Court, that Ms. Pascoal is advocating for a "permanent right" to adjust one's status that a widow can keep in her back pocket for years down the road.

## IV.  CONCLUSION

For these reasons, we reverse the District Court's grant of summary judgment and remand for entry of judgment in favor of Ms. Pascoal.

**REVERSED** and **REMANDED.**

18