[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12460
_____

D.C. Docket No. 1:12-cv-03133-RLV

THE ROYALTY NETWORK, INC.,
FRANK LIWALL,
STEVEN WEBER,

Plaintiffs-Appellees,

versus

CARL HARRIS,
d.b.a. Phat Groov Music,
PHAT GROOV MUSIC,
PHAT GROOV MUSIC LLC,
WWW.ROYALTYNETWORK.COM LLC,
.COM,WWW.ROYALTYNETWORK, LLC,
WWW.ROYALTYNETWORK.COM,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 10, 2014)

Before WILSON, JORDAN and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Appellants Carl Harris and his company, Phat Groov Music, appeal the district court's order denying their motion to dismiss a complaint filed by Appellees The Royalty Network, Frank Liwall, and Steven Weber.  Harris sought to dismiss the complaint because the Appellees failed to comply with Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute by not filing verifications with their complaint, as required by O.C.G.A. § 9-11-11.1(b).  The district court denied the motion, and Harris pursued this interlocutory appeal.  We conclude we have appellate jurisdiction under the collateral order doctrine and we affirm the district court's order because § 9-11-11.1 does not apply in federal court in a diversity action.

## I.  BACKGROUND

The Royalty Network, Inc. is a New York corporation involved in music publishing and administration.  Liwall is the president of The Royalty Network and Weber is the company's west coast director.  Harris, a Georgia resident, provided consulting services to The Royalty Network and would recruit songwriters, music artists, and producers on behalf of the corporation.  The record indicates Harris worked for The Royalty Network since at least 2005, but the parties' relationship ended in January 2011 when Liwall terminated Harris's consulting agreement.

2

Harris disputed the termination, and, following several communications between the parties, The Royalty Network filed a lawsuit in New York state court on May 12, 2011, alleging various causes of action and seeking a declaratory judgment that the consulting agreement had been terminated.

On May 27, 2011, Harris filed a complaint in the Fulton County Superior Court in Georgia, alleging causes of action against The Royalty Network and Liwall related to the company's alleged failure to pay him under the consulting agreement.  On August 26, 2011, the Fulton County Superior Court stayed Harris's action pending resolution of the New York lawsuit.

In September 2011, Harris, acting through Phat Groov Music LLC, created and activated the website "www.theroyaltynetwork.com" (the website).  The website contains numerous statements denouncing the Appellees and their litigation tactics and providing copies of documents as well as commentary about documents filed in the lawsuits between the parties.

On December 22, 2011, the New York trial court dismissed The Royalty Network's lawsuit for lack of personal jurisdiction over Harris.  Subsequently, on February 21, 2012, Appellees filed a complaint against Harris in the U.S. District Court for the District of Arizona alleging causes of action stemming from Harris's statements on the website.

3

On May 31, 2012, a state appellate court affirmed the trial court's dismissal of Appellees' New York lawsuit.  In August 2012, the Arizona federal district court dismissed Appellees' lawsuit for lack of personal jurisdiction.

On September 6, 2012, Appellees filed the instant complaint against Harris and his company in the U.S. District Court for the Northern District of Georgia.  In the complaint, Appellees alleged that Harris and Phat Groov Music published false and defamatory statements on the website and that they intended to prevent others from doing business with the company.  Appellees asserted causes of action for libel *per se*, "injurious falsehood," and intentional infliction of emotional distress. Appellees requested damages of not less than $1 million, punitive damages of $3 million, and an injunction requiring Harris to take down the website.

Harris filed a *pro se* motion to dismiss the complaint because it did not contain the verifications required by O.C.G.A. § 9-11-11.1(b). Section 9-11-11.1(b) requires that for any claim relating to an act that could be construed as having been done in furtherance of the right of free speech or the right to petition the government, both a plaintiff and plaintiff's counsel must file a written verification certifying that the claim is well grounded in fact, is warranted under existing law, and that the claim is not made for an improper purpose. O.C.G.A. § 9-11-11.1(b).

4

The district court denied Harris's motion to dismiss, finding in pertinent part that the statute did not apply to the case. Harris filed a counseled motion for reconsideration, arguing the district court was wrong on the merits or, alternatively, urging the district court to either certify its order for interlocutory review by this Court or to certify a question to the Georgia Supreme Court. The next day, Harris filed a notice of appeal from the district court's order denying his motion to dismiss.

The district court denied Harris's motion for reconsideration and also declined to certify the appeal for interlocutory review by this Court or to certify a question to the Georgia Supreme Court. The district court stayed further proceedings pending this Court's resolution of Harris's appeal.

## II.  STANDARD OF REVIEW

We review *de novo* questions concerning our jurisdiction. *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1269 (11th Cir. 2013). We also review *de novo* federal-versus-state choice of law questions, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008), as well as the district court's interpretation and application of a statute, *Williams v. Sec'y, U.S. Dep't of Homeland Sec.*, 741 F.3d 1228, 1231 (11th Cir. 2014).

## III.  DISCUSSION

5

This case comes to us on interlocutory review and we must first consider whether we have appellate jurisdiction to consider the appeal.  We conclude we have jurisdiction to consider the case under the collateral order doctrine, and hold that § 9-11-11.1(b)'s verification requirement conflicts with Federal Rule of Civil Procedure 11 and therefore does not apply in federal cases arising under the district court's diversity jurisdiction.  Accordingly, we affirm the district court's decision denying Harris's motion to dismiss.

## A.  Collateral Order Doctrine

It is by now axiomatic that this Court has jurisdiction over an order of the district court only if the order is final within the meaning of 28 U.S.C. § 1291, or if it falls into a small class of orders that are otherwise made appealable by statute or "jurisprudential exception."  *See CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000); *see also* 28 U.S.C. § 1291.  The collateral order doctrine is one such exception.  The Supreme Court articulated the collateral order doctrine in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949), based on its recognition that § 1291 must be given a "practical rather than a technical construction."  *Id.* at 546, 69 S. Ct. at 1226.  In *Cohen* the Court held that "the statute encompasses not only judgments that terminate an action, but also a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'"  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S.

6

100, 106, 130 S. Ct. 599, 605 (2009) (internal quotation marks omitted).  "To come within the small class of decisions excepted from the final-judgment rule by *Cohen*, the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."  *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009) (internal quotation marks omitted).

The Supreme Court has emphasized that the collateral order doctrine is narrow and has cautioned that each prong of the *Cohen* test is stringent.  *See Will v. Hallock*, 546 U.S. 345, 349-50, 126 S. Ct. 952, 957 (2006); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S. Ct. 1992, 1996 (1994).  Thus, the doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered."  *Carpenter*, 558 U.S. at 106, 130 S. Ct. at 605 (internal quotation marks omitted).  With these principles in mind, we conclude the district court's order determining that § 9-11-11.1(b) conflicts with the federal rules falls within the small class of orders excepted from the final judgment rule via the collateral order doctrine and is therefore immediately appealable.

The district court's order satisfies the first *Cohen* prong because it conclusively determined the disputed question of whether § 9-11-11.1(b)'s

verification requirement applies in federal court.  The district court's order answered that question in the negative, finding § 9-11-11.1(b) does not apply in a diversity action because it conflicts with the Federal Rules of Civil Procedure and was "procedural" within the meaning of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).  The court's order finally settled the question and did not leave anything open, unfished, or inconclusive.  *See Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. Unit A Aug. 1981) (explaining an order was appealable under the collateral order doctrine because it "disposed of the . . . issue, leaving nothing open, unfinished, or inconclusive" (internal quotation marks omitted)).[1]

The district court's order also satisfies the second and third prongs of the collateral order doctrine.  Both prongs require a sufficiently strong justification for an immediate appeal to overcome the ordinary preference for a single appeal following the end of litigation.  *Carpenter*, 558 U.S. at 107, 130 S. Ct. at 605; *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014) ("The importance of the right asserted is a significant part of the collateral order doctrine." (internal quotation marks and brackets omitted)).  In deciding whether an issue is important enough to justify immediate appeal, we do not "engage in an individualized jurisdictional inquiry."  *Carpenter*, 558 U.S. at 107, 130 S. Ct. at 605 (internal

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

quotation marks omitted).  Rather, our inquiry focuses "on the entire category to which a claim belongs."  *Id.* (internal quotation marks omitted).  We have explained that "[t]o date, an interlocutory order has been deemed important enough to justify *Cohen* review only where some particular value of a high order . . . was marshaled in support of the interest in avoiding trial and the appellate court determined that denying review would imperil that interest."  *Schair*, 744 F.3d at 1254 (internal quotation marks omitted).

The denial of a motion to dismiss for failure to comply with Georgia's anti-SLAPP statute implicates significant constitutional guarantees and values of an exceptionally high order; specifically, the right to freedom of speech and the right to petition the government for redress of grievances.  *See* U.S. Const. amend. I.  The Supreme Court has repeatedly extolled the importance of the freedom of speech, explaining that the First Amendment expresses "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964), and that "speech concerning public affairs is more than self-expression; it is the essence of self-government.  Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection," *Snyder v. Phelps*, 131 S. Ct. 1207, 1215 (2011) (citation and internal quotation marks omitted); *see also DC Comics v.*

*Pac. Pictures Corp.*, 706 F.3d 1009, 1015-16 (9th Cir. 2013) ("It would be difficult to find a value of a higher order than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute." (brackets and internal quotation marks omitted)).  Furthermore, in codifying § 9-11-11.1, the Georgia legislature provided:

> [I]t is in the public interest to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances.  The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of freedom of speech and the right to petition government for a redress of grievances should not be chilled through abuse of the judicial process.

O.C.G.A. § 9-11-11.1(a).  Thus, the First Amendment values at the heart of Georgia's anti-SLAPP statute militate strongly in favor of immediate appellate review.

In addition to implicating important public values, the district court's order regarding the applicability of § 9-11-11.1(b) in federal court meets the second *Cohen* prong because it is entirely separate from the merits of the case.   In their complaint, Appellees pled causes of action for defamation and related torts.  The determination that § 9-11-11.1(b)'s verification requirement is a state procedural rule that does not apply in federal court does not turn on the underlying facts in the complaint nor does it involve the merits of the Appellees' claims.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 149-50 (2d Cir. 2013) (holding

10

that a district court order regarding the applicability of a state anti-SLAPP statute in federal court was completely separate from the merits).

The third *Cohen* prong is satisfied in this case because the district court's conclusion that § 9-11-11.1(b)'s verification requirement does not apply in federal court is effectively unreviewable on appeal from a final judgment.  The Supreme Court has indicated that "the decisive consideration [under the third *Cohen* prong] is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Carpenter*, 558 U.S. at 107, 130 S. Ct. at 605 (internal quotation marks omitted).  Georgia's anti-SLAPP statute is intended to protect its citizens from having their important First Amendment rights to free speech and to petition the government chilled by the threat of being dragged into onerous judicial proceedings by improper or abusive tort claims.  *See Atlanta Humane Soc'y v. Harkins*, 603 S.E.2d 289, 292 (Ga. 2004) ("[T]he purposes of Georgia's anti-SLAPP statute are to encourage citizen participation in matters of public significance through the exercise of the right of free speech and the right to petition the government for redress of grievances, and to prevent their valid exercise from being chilled through abuse of the judicial process.").  Forcing a defendant to wait until the conclusion of such proceedings to appeal the denial of a § 9-11.11.1(b) motion to dismiss would subject defendants to the very judicial process and chilling effects the state

legislature intended to curtail, thus imperiling the important First Amendment interests at the heart of the statute. *Cf. Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Accordingly, we are persuaded that the denial of a motion to dismiss for failure to comply with Georgia's anti-SLAPP statute imperils a substantial public interest and value of a particularly high order, and is effectively unreviewable following entry of a final judgment. Because the district court's order concluding § 9-11-11.1(b) does not apply in federal court satisfies all three prongs of the collateral order doctrine, we possess jurisdiction to consider Harris's appeal.

B. *Conflict with the Federal Rules of Civil Procedure*

Harris contends the district court erred by finding § 9-11-11.1(b)'s verification requirement is a procedural rule that does not apply in federal court. It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1141 (1965). We have explained that to aid courts in determining whether a law is substantive or procedural, "the Supreme Court developed a two-part test in *Hanna*." *Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001) (citation omitted). "Under the *Hanna* test, when the federal law sought to be applied is a congressional statute or Federal

12

Rule of Civil Procedure, the district court must first decide whether the statute is sufficiently broad to control the issue before the court." *Id.* (internal quotation marks omitted). "If the federal procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law." *Id.* (internal quotation marks omitted). A federal rule applies in the face of a conflicting state rule, however, only if the federal rule comports with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7, 116 S. Ct. 2211, 2219 n.7 (1996) ("Concerning matters covered by the Federal Rules of Civil Procedure . . . [i]t is settled that if the Rule in point is consonant with the Rules Enabling Act, and the Constitution, the Federal Rule applies regardless of contrary state law." (citation omitted)).

If the federal rule is not sufficiently broad to cover the issue or does not directly conflict with the state law, the district court should then proceed to the second prong of the *Hanna* test, which requires the district court to apply *Erie* and its progeny to determine "whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping." *Burke*, 252 F.3d at 1265 (internal quotation marks omitted); *see also Shady Grove Orthopedic Assocs., P.A. v.*

13

*Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437 (2010) ("We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.").

Accordingly, we first consider whether the Federal Rules of Civil Procedure are sufficiently broad to control the issue of whether a complaint must be verified. In the federal system, Rule 11 provides the general rule regarding verifications and representations to the court.[2]  In pertinent part, Rule 11(a) states that "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."  Fed. R. Civ. P. 11(a).  Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it— an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

[2] Although the district court concluded § 9-11-11.1(b)'s verification requirement is inconsistent with Federal Rule of Civil Procedure 8(a), we may affirm the district court's decision on any ground supported by the record, even if that ground was not relied on or considered by the district court.  *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Rule 11(c) authorizes the district court to impose appropriate sanctions on an attorney, law firm, or party for violations of the rule. Fed. R. Civ. P. 11(c).

Section 9-11-11.1(b) addresses the same subjects, i.e., whether a complaint must be accompanied by a verification or affidavit, what certifications must be made, and sanctions.  Specifically, the Georgia statute provides:

> For any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, both the party asserting the claim and the party's attorney of record, if any, shall be required to file, contemporaneously with the pleading containing the claim, a written verification under oath . . . . Such written verification shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication . . . and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.  If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim.  If a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the persons who signed the verification, a represented party, or

15

both an appropriate sanction which may include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

O.C.G.A. § 9-11-11.1(b).

Based on the plain text of the state law and the federal rule, it is apparent that the federal rule is broad enough to cover the issue and that the two directly conflict. The federal rule explicitly provides that a pleading need not be verified or accompanied by an affidavit and allows parties discretion in deciding whether to verify pleadings. The Georgia statute, by comparison, mandates that a complaint or pleading asserting a claim must be accompanied by a verification making specific representations. *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7, 107 S. Ct. 967, 970 (1987) (concluding a state statute providing for a mandatory affirmance penalty conflicted with Federal Rule of Appellate Procedure 38 which affords courts of appeals discretion to assess damages for frivolous appeals and stating that "the Rule's discretionary mode of operation unmistakably conflicts with the mandatory provision of Alabama's affirmance penalty statute"). Rule 11, moreover, provides the rule regarding representations to the district court, stating that any presentation of a document to the district court in any form carries with it a certification from the attorney or unrepresented party submitting the document. *See* Fed. R. Civ. P. 11(b). Section 9-11-11.1(b) addresses this same subject but requires specific averments in writing from both the represented party *and* his

16

counsel.  The Georgia law's requirements for filing a complaint or pleading directly conflict with the procedure for filing a pleading specified in the federal rule, and the two may not peacefully co-exist or operate in the same case.  *Cf. Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26 n.4, 108 S. Ct. 2239, 2242 n.4 (1988) (explaining that to directly conflict, federal and state law need not be "perfectly coextensive and equally applicable to the issue at hand").

We acknowledge that Rule 11 states a pleading need not contain a verification "[u]nless a rule or statute specifically states otherwise."  Fed. R. Civ. P. 11(a).  The rule's reference to other rules or statutes, however, means other federal rules or statutes.  We long ago held in *Follenfant v. Rogers*, 359 F.2d 30, 32 n.2 (5th Cir. 1966), that "state rules requiring verified pleadings . . . are wholly inapposite [in federal court]" in light of Rule 11, and that holding remains binding and is applicable in the instant case.  *See also Farzana K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 705 (7th Cir. 2007) (explaining that Rule 11's reference to other rules or statutes "means federal rule or federal statute, because state requirements for pleading do not apply in federal litigation").

Because § 9-11-11.1(b)'s verification requirement conflicts with Rule 11, we must apply the federal rule unless it is invalid under the Rules Enabling Act or the Constitution.  *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 917 n.11 (11th Cir. 1989).  Regarding the constitutionality of the federal

17

rules, the Supreme Court has held that "[r]ules regulating matters indisputably procedural are *a priori* constitutional," and further, "[r]ules regulating matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either, also satisfy this constitutional standard." *Woods*, 480 U.S. at 5, 107 S. Ct. at 970 (internal quotation marks omitted). Rule 11's regulation of verifications is "indisputably procedural" and thus "*a priori* constitutional," but even if it were not, the rule is at least "rationally capable of classification" as procedural and is therefore constitutional. *See id.*

Rule 11 is also valid under the Rules Enabling Act. That act authorized the Supreme Court to promulgate rules of procedure for cases in the federal district courts and courts of appeals. 28 U.S.C. § 2072(a); *Woods*, 480 U.S. at 5 n.3, 107 S. Ct. at 969 n.3. But to be valid under the Rules Enabling Act, the federal rule at issue must not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *Woods*, 480 U.S. at 5, 107 S. Ct. at 970. The Supreme Court has stated that "any Rules Enabling Act challenge to Rule 11 has a large hurdle to get over" because it can "succeed only if the Advisory Committee, [the Supreme Court], and Congress erred in their prima facie judgment that the Rule transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 552, 111 S. Ct. 922, 933 (1991)

18

(internal quotation marks and alteration omitted) (addressing a challenge to the imposition of Rule 11 sanctions against a represented party).

Rule 11 does not abridge, enlarge, or modify any substantive rights simply because application of that rule instead of § 9-11-11.1(b) will mean that the Appellees' lawsuit will go forward against Harris. In *Hanna*, the Supreme Court confronted a similar situation when it held that the federal rule governing service of process applied to a lawsuit rather than the contrary Massachusetts rule under which the lawsuit would not have been properly commenced. *See Hanna*, 380 U.S. at 463-64, 85 S. Ct. at 1140. The Court explained that it had previously held "[t]he fact that the application of Rule 4(f) will operate to subject [the] petitioner's rights to adjudication by the [federal] district court . . . will undoubtedly affect [the petitioner's] rights. But it does not operate to abridge, enlarge or modify the rules of decision by which that court will adjudicate [the petitioner's] rights." *Id.* at 465, 85 S. Ct. at 1140 (internal quotation marks omitted). Although following Rule 11's dictate that a pleading need not be verified will subject Harris's rights to adjudication by the district court, the rule does not operate to abridge, enlarge, or modify the rules of decision by which the district court will adjudicate the Appellees' claims.

In addition, it is irrelevant to our Rules Enabling Act analysis that § 9-11-11.1 may have been enacted for substantive or important purposes, such as

19

safeguarding First Amendment rights or deterring abusive filings, because the state legislature's objectives "cannot override the statute's clear text." *Shady Grove*, 559 U.S. at 403, 130 S. Ct. at 1440; *see also Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S. Ct. 422, 426 (1941) ("If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded.  The test must be whether a rule really regulates procedure."). Even if § 9-11-11.1(b) is directed toward a substantive aim, it achieves its goal through the mechanism of requiring a party and his counsel to file a verification or affidavit.  That requirement conflicts with a valid federal rule of civil procedure, and we cannot rewrite either the rule or the state law to avoid a collision.  *Shady Grove*, 559 U.S. at 403, 405-06, 130 S. Ct. at 1440-42.

Furthermore, because the Georgia anti-SLAPP statute seeks to achieve its objectives through a verification requirement, the instant case is distinguishable from the cases considered by other circuits that have found state anti-SLAPP laws applicable in federal court.  For instance, in *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir. 1999), the Ninth Circuit held California's anti-SLAPP statute did not conflict with Federal Rules of Civil Procedure 8, 12, or 56, because the state law and federal rules operated in different spheres, and, further, that the state law was "substantive" for *Erie* purposes and therefore applied in federal court.  As explained by the Ninth

20

Circuit, California's anti-SLAPP law authorizes a defendant to file a special motion to strike and requires the defendant to make a prima facie showing that the lawsuit arises from his right to petition or to free speech. *Id.* at 971. The burden then shifts to the plaintiff to establish a reasonable probability he will prevail on the merits. *Id.*; *see also* Cal. Civ. Proc. Code § 425.16(b)(1).

In *Henry v. Lake Charles American Press, LLC*, 566 F.3d 164, 168-69, 182 (5th Cir. 2009), the Fifth Circuit dismissed a claim under Louisiana's anti-SLAPP statute, stating without elaboration that Louisiana law, including the state's anti-SLAPP provision, governed that diversity case. Louisiana's anti-SLAPP statute, like the California statute, authorizes a defendant to file a special motion to strike claims arising from an act in furtherance of the right to free speech or to petition. *Id.* at 170. After a defendant files a motion to strike and demonstrates the anti-SLAPP law applies to the activity giving rise to the suit, the plaintiff must establish a probability of success on the merits. *Id.*; *see also* La. Code Civ. Proc. Ann. art. 971(A)(1).

In *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010), the First Circuit concluded that Maine's anti-SLAPP statute applied in federal diversity cases notwithstanding Federal Rules of Civil Procedure 12(b)(6) and 56 because the federal rules were not broad enough to cover the same issues as the state law. According to the First Circuit, Maine's anti-SLAPP statute "creates a special

21

process by which a defendant may move to dismiss any claim that arises from the defendant's exercise of the right of petition under either the United States Constitution or the Constitution of Maine." *Id.* at 82. The law specifically provides that once a defendant brings a special motion to dismiss and demonstrates the plaintiff's claims are based on his petitioning activity, the trial court must grant the motion unless the plaintiff shows the defendant's "exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." *Id.* (internal quotation marks omitted); *see also* Me. Rev. Stat. tit. 14, § 556. The First Circuit held that the Maine statute was not preempted by Rules 12(b)(6) and 56 because the state law and the federal rules addressed different issues, and the statute did not create a substitute for the rules. *Godin*, 629 F.3d at 88-89. The First Circuit also concluded that Maine's anti-SLAPP law applied in federal court because application of the state law furthered *Erie*'s twin aims of discouraging forum shopping and avoiding inequitable administration of the law. *Id.* at 91-92.

Georgia's anti-SLAPP statute is distinct from the anti-SLAPP statutes of California, Louisiana, and Maine in that it attempts to effectuate its deterrent purpose through a verification requirement. The California, Louisiana, and Maine provisions do not require a complaint to be verified, and the courts of appeals considering those statutes were therefore not presented with a potential conflict

22

between the state laws and Rule 11.  *Compare* Cal. Civ. Code § 425.16, *and* La. Code Civ. Proc. Ann. art. 97, *and* Me. Rev. Stat. tit. 14, § 556, *with* O.C.G.A. § 9-11-11.1.  Accordingly, the First, Fifth, and Ninth Circuits had no occasion to address the question we consider in this case.  In addition, unlike the First and Ninth Circuits, because we conclude a valid federal rule controls the question before us, we do not reach the second *Hanna* prong and thus do not wade into *Erie*'s murky waters.  *See Shady Grove*, 559 U.S. at 398, 130 S. Ct. at 1437.

In sum, Rule 11's discretionary rule regarding the verification of pleadings answers the question in this case, does not transgress either the terms of the Rules Enabling Act or the Constitution, and is valid and controlling in federal cases arising under the district court's diversity jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, we conclude we have jurisdiction to consider Harris's appeal, and we hold that O.C.G.A. § 9-11-11.1(b)'s verification requirement does not apply in diversity cases in federal court.  Accordingly, the district court's order is **AFFIRMED.**

JORDAN, Circuit Judge, concurring.

I concur in Parts I, II, and III.A of Judge Black's opinion for the Court. As to Part III.B, I concur in the judgment because we are bound by *Follenfant v. Rogers*, 359 F.2d 30, 32 n.2 (5th Cir. 1966) (holding that "state rules requiring verified pleadings . . . are wholly inapposite" in federal diversity actions). I write to explain why I believe *Follenfant* was wrongly decided.

The "initial step" in "resolving conflicts between state law and the Federal Rules" is to "determine whether, when fairly construed, the scope of [the] Federal Rule . . . is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, 'control the issue' before the court, leaving no room for the operation of that law." *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (citations omitted). "If no conflict exists, . . . the analysis need proceed no further, for the court can apply state and federal law harmoniously to the issue at hand." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1307 (11th Cir. 2002). In my view, there is no "direct collision" between O.C.G.A. § 9-11-11-.1(b) and Rule 11 of the Federal Rules of Civil Procedure.

In relevant part, Rule 11(a) provides that "[u]nless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit." The text of Rule 11(a) is not confined to *federal* rules or statutes that require verification, and "it is the Rule itself, not the Advisory Committee's

24

description of it, that governs." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011). Given that § 9-11-11.1(b) is a "statute [that] specifically states otherwise," Rule 11(a) permits its application in a diversity action in federal court. *See Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 544 (1991) (declining to read the phrase "attorney or party" in Rule 11 as "attorney or *unrepresented* party").

But even if Rule 11(a) were ambiguous—because it is arguably unclear whether the phrase "a rule or statute" refers only to *federal* rules and statutes or to both *federal and state* rules and statutes—the result would be the same. The Supreme Court has said that "we should read an ambiguous Federal Rule to avoid 'substantial variations [in outcomes] between state and federal litigation.'" *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 405 n.7 (2010) (majority opinion) (citation omitted and alteration in original). By reading Rule 11(a)'s text to refer to *federal and state* rules and statutes, we avoid a conflict with § 9-11-11.1(b). *See Business Guides*, 498 U.S. at 542 (explaining that the language now found in Rule 11(a) "acknowledges that in some situations represented parties are required by rule or statute to verify pleadings or sign affidavits").

In sum, I agree with Judge Fitzpatrick's conclusion in *Int'l Brominated Solvents Association v. American Conference of Governmental Industrial*

*Hygienists, Inc.*, No. 5:04 CV 394(DF), 2005 WL 1220850, at *2 n.3 (M.D. Ga. May 20, 2005), that the "similarities" between § 9-11-11.1(b) and Rule 11 do not create a conflict because "compliance with each can be simultaneously achieved." Were it not for the broad sweep of *Follenfant*, I would reverse and direct that the complaint be dismissed due to the plaintiffs' failure to comply with § 9-11-11.1(b)'s verification requirement.