[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15547
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00468-ODE

GALAWEZH SHOWAN,

Plaintiff - Appellant,

versus

PATRICK PRESSDEE,
KRISPY KREME DOUGHNUT CORPORATION,

Defendants - Appellees,

PENSKE TRUCK LEASING CO., L.P.,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 29, 2019)

Before WILLIAM PRYOR, BRANCH, and ANDERSON, Circuit Judges.

BRANCH, Circuit Judge:

Plaintiff Galawezh Showan appeals from her $330,000 jury verdict against Defendants Patrick Pressdee and Krispy Kreme Doughnut Corporation ("Krispy Kreme"). For the reasons that follow, we affirm in part, vacate in part, and remand for a new trial.

## I. GENERAL BACKGROUND

### A. Facts and Procedural History

On April 27, 2015, Pressdee, an employee of Krispy Kreme, was driving in the course of his employment when he rear-ended Showan while she was stopped at a red light. Pressdee was travelling at 35–40 mph when he collided with Showan, causing her vehicle to hit the vehicle in front of it. On May 5, 2015, Krispy Kreme issued Pressdee a corrective action report that acknowledged Pressdee "was at fault" for the accident. Krispy Kreme's insurance claim summary prepared on May 8, 2015, indicates Showan was "0%" negligent.

Showan had serious injuries and was transported by EMS to the emergency room. She sustained a whiplash-type injury to her cervical spine, wrist swelling, and facial bruising with a minor laceration. Showan also had previous back issues, which she contends the accident exacerbated. Her back issues were "noticeably improved" following back surgery that preceded the accident. However, post-

2

accident, Showan asserts she is "in pain twenty-four hours a day, not only in her back but in her head, neck, wrist, and legs."

Showan works as a cashier at Walmart, as she did before the accident. A Walmart cashier is required to stand and walk to assist customers, although sitting on a stool is sometimes permitted. Showan now needs to use the stool more frequently, which limits her to working only in the "express line" checkout lanes. Cashiers working in the express lanes can sit more often than cashiers who work the self-checkout stations, as the self-checkout cashiers must move around to assist customers as needed. Showan alleges she will be unable to work while recovering from potential future medical treatment.

On October 19, 2015, Showan filed a personal injury action in the State Court of Gwinnett County, Georgia. Defendants removed to the United States District Court for the Northern District of Georgia.[1]

When Defendants answered, they asserted that they breached no duty to Showan, that Showan was comparatively negligent, that Showan assumed the risk,

---

[1] The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1). "[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016)). Showan was domiciled in Georgia at the time of removal. This Court allowed the parties to supplement the record with an affidavit regarding Pressdee's citizenship. Pressdee says he was domiciled and served in North Carolina when this lawsuit was filed, and he has since moved to Ohio. Krispy Kreme is incorporated in North Carolina, where it also has its principal place of business. Thus, there was complete diversity at the time of removal.

3

and that Showan's alleged injuries "were not foreseeable." Pressdee's response to Showan's request for admissions, dated January 21, 2016, similarly refused to admit that his actions caused or contributed to the collision or that Showan suffered injuries. At his April 27, 2016, deposition, however, Pressdee stated that he was driving at 40 mph when he collided with Showan, who was stopped at a red light and did nothing to contribute to the collision.

It was not until shortly before trial that Defendants moved, on July 25, 2017, to amend their answers "to streamline the issues to be tried." The district court granted the motion, subject to conditions. The court stated that "Defendants' amended answer will not preclude Plaintiff from seeking attorneys' fees and costs pursuant to state law should she prevail at trial." The court explained that the condition was "appropriate because this case is eighteen months old and only now, on the eve of trial, are Defendants willing to admit significant liability of which they have arguably been aware since the collision at issue." Further, the original answers were to remain admissible for impeachment purposes at trial. Defendants then filed their amended answers on August 17, 2017.

## B. Issues on Appeal

The case proceeded to a jury trial that resulted in a $330,000 verdict for Showan. But Showan appeals, arguing several of the district court's rulings throughout the proceedings were erroneous.[2] The issues are as follows:

1. Showan alleges that, during Defendants' opening remarks at trial, they improperly insinuated she was the reason the case did not settle. She argues the district court erred in not giving a curative instruction that she requested.

2. Defendants' experts testified that Showan's doctor charged too much for one of the surgeries she had following the accident. Showan contends this testimony violated the collateral source rule and Rule 403 of the Federal Rules of Evidence.

3. Showan contends that Defendants misled the jury into believing that Showan's doctor was the only person present in the operating room during the surgery, which may have in turn misled jurors into believing the doctor overcharged for the surgery. Citing the rule of completeness, Showan offered the entire record of treatment at the surgical center where the procedure was performed. The district court disallowed the evidence, which Showan argues was error.

4. During closing argument, Showan's counsel invited the jury to measure Showan's damages on a per-hour basis. The district court interjected, telling him not to make a unit-of-time damages argument. Showan argues that such an argument is allowed and that the district court's admonishment was highly prejudicial.

5. Defendants successfully convinced the district court to grant judgment as a matter of law on Showan's lost future wages damages claim, finding the evidence—to the extent any existed— was too speculative to support the claim. Showan disagrees.

---

[2] "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980). Showan is an aggrieved party because the district court did not submit her request for attorney's fees and expenses to the jury.

6. Showan argues that the district court erred in denying, as a matter of law, her motion to have the jury assess her attorney's fees under a Georgia statute. She contends the statute required the court to hold a hearing on frivolity.

The sixth issue presented is, as the saying goes, last but not least. As explained below, a new trial is necessary because Georgia law required the district court to submit Showan's motion for fees to the jury. The district court's failure to do so is dispositive and requires us to vacate and remand for a new trial. In the interest of judicial economy, we consider Showan's other arguments. For ease of reference, we address each issue separately, tracking the chronological course of the proceedings in the district court, and include relevant corresponding facts as we do so.

## II.  REFERENCES TO SETTLEMENT

### A.  Defendants' Motion in Limine and Opening Statement

Defendants moved in limine to exclude "evidence regarding the manner of litigation up to the time of trial." Specifically, they asked the district court to "exclude reference to disputes before trial, including disputes, motions, and court orders on discovery or motions in limine." Further, they moved in limine, under Rule 609 of the Federal Rules of Evidence (presumably they meant Rule 408),[3] to

---

[3] Rule 609 concerns "attacking a witness's character for truthfulness by evidence of a criminal conviction." Rule 408 addresses the admissibility of evidence regarding compromise offers and negotiations, and it is typically used to exclude evidence of settlement negotiations.

exclude evidence of settlement negotiations or discussions.  The district court

granted the motions.

Yet at trial, Defendants began their opening statement by referring to

settlement:

> Most cases don't make it this far.  They don't come to trial.  The
> parties work really hard to get their cases resolved before they get to
> this point.  We don't want to waste the time of the jurors.  We don't
> want to waste the time of the court.
> . . .
> There are certain things we can agree on, and I'm going to go through
> those with you quickly, and then the things that are sticking points
> that we can't agree on.
> . . .
> Krispy Kreme Donut Corporation admitted responsibility for the
> cause of the collision.  We admit that Mr. Pressdee was working for
> us at the time.  So no issues regarding that.  We also acknowledge that
> Ms. Showan didn't do anything to cause this collision, not a single
> thing.
> . . .
> We also agree . . . this was a serious impact.

Showan objected immediately, and the district court overruled the objection.  After

Defendants concluded their opening, during a recess, Showan requested a curative

instruction.  In essence, Showan argued that Defendants had insinuated that she

was to blame for the case not settling, in light of their stated willingness to admit

liability.  She urged the court to inform the jury that Defendants had not admitted

liability until shortly before the trial.  The district court refused to do so, finding

that Defendants' statement was accurate at the time it was made and that an

instruction "would be too heavy-handed."

7

**B. Whether the District Court Should Have Given a Curative Instruction**

Showan argues on appeal that the trial "proceed[ed] with an improperly influenced or tainted jury."

"We review a district court's evidentiary rulings for abuse of discretion." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1349 n.7 (11th Cir. 2007). "Errors in evidentiary rulings are not grounds for reversal unless substantial prejudice results." *Peterson v. Willie*, 81 F.3d 1033, 1036 (11th Cir. 1996) (quoting *King v. Gulf Oil Co.*, 581 F.2d 1184, 1186 (5th Cir. 1978)). "Statements made in oral arguments must be plainly unwarranted and clearly injurious to constitute reversible error." *Id.*

The district court did not abuse its discretion in not providing a curative instruction. It is arguable that some of the opening statement was unwarranted— and somewhat disingenuous in light of Defendants' motion in limine on the issue. But the statement was not clearly injurious to Showan. Indeed, although the district court did not give a curative instruction to the jury, it did allow Showan to contradict any insinuation of Defendants' previous graciousness during the litigation. Showan requested, over Defendants' objection, that she be allowed to use Pressdee's initial denial of liability. Notably, the district court granted this request. The ability to mount a direct attack on Defendants' counsel's opening

8

remarks was sufficient to counteract any injury from Defendants' indirect suggestion in the opening statement.

Nor did the comments in the opening statement violate Rule 408 of the Federal Rules of Evidence. That rule prohibits introducing evidence of *actual* settlement offers or negotiations for certain prohibited purposes. Defendants' counsel's opening statement did not refer to evidence of any specific offers to settle or compromise; it observed generally what happens in "[m]ost cases."

We therefore find no reversible error in the district court's ruling on Defendants' counsel's opening statement.[4]

## III.  EVIDENCE OF MEDICAL RATES

### A.  Defendants' Medical-Rate Experts

On February 9, 2016, as part of her treatment following the accident, Showan had a discectomy—back surgery that involves local anesthetic to remove lumbar disc material. Showan's doctor charged $173,213 for the surgery. He also charged a facility fee of $80,768.[5]

Defendants believed those charges were excessive and sought to prove it through the testimony of medical billing experts, Lamar Blount and Jessica

---

[4] As we ultimately remand this case for a new trial, the district court can nonetheless revisit the issue as necessary.

[5] During closing argument, Showan said these bills were actually for higher amounts. We need not resolve this discrepancy in this appeal.

Schmor. Showan was uninsured, and Blount and Schmor relied on average rates that included those subsidized by the government or private insurers. Blount testified that, based on databases for doctors in the same area, the 90th percentile charge for the same procedure would be $20,688. The 80th percentile for a facility fee would be $27,144. Schmor testified that the doctor's billing practices were highly unusual and potentially unethical: "You do not see facility charges being billed on an itemization from a physician's practice. They're completely separate entities, and they're different bills. . . . [T]o see a facility charge on a physician bill is highly unlikely. . . . I've only seen it in two practices"—Showan's doctor and that doctor's previous partner. Schmor also expressed skepticism regarding such charges from an ambulatory surgery center like the one where Showan had her surgery.

Showan moved in limine to exclude this testimony. Showan contended the testimony violated the collateral source rule, which prohibits evidence of an insurance company's payments to a tort victim. Showan argues that Blount and Schmor were suggesting that her medical bills were "too high because Medicare, the VA, or Acme Insurance Company thinks so, and/or they do not pay as much for the treatment [she] had." "In other words, Defendants [were] employing a back-door tactic that [sought] to indirectly accomplish what the Collateral Source Rule would never permit them to do directly." Showan further argued that the

10

testimony violated Rule 403 of the Federal Rules of Evidence because it was irrelevant, prejudicial, and confusing in light of the fact that she did not receive any assistance from any government or other health insurer in paying her medical bills.

The district court rejected Showan's arguments, finding the testimony was not offered to show what Showan would have received from an insurer.[6] The district court explained that "there is a difference between presenting evidence of discounted rates a plaintiff could receive on [] medical costs based on the plaintiff's specific access to certain advantages, and evidence of market rates as a whole." The court found the testimony in question was offered to show whether the medical bills were reasonable and allowed it.

### B.  Whether the District Court Properly Admitted the Testimony

On appeal, Showan reiterates her motion-in-limine arguments. She contends the district court should not have admitted the testimony. Again, we "review a district court's evidentiary rulings for abuse of discretion." *Proctor*, 494 F.3d at 1349 n.7.

Under Georgia law, a tort victim is "entitled to recover medical expenses arising from his injuries, including hospital charges, that [are] 'reasonable and necessary.'" *MCG Health, Inc. v. Kight*, 353, 750 S.E.2d 813, 817 (Ga. Ct. App.

---

[6] The district court also acknowledged that, if the testimony had been offered for this reason, it would have been improper under the collateral source rule.

11

2013) (quoting *Allen v. Spiker*, 689 S.E.2d 326, 329 (Ga. Ct. App. 2009)).

"Moreover, under the collateral source rule, [the victim is] entitled to seek full recovery from the tortfeasor of reasonable and necessary hospital charges undiminished by [the victim's] insurance payments or 'write-offs.'" *Id.*  In other words, the "collateral source rule bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a third party and taking any credit toward the defendant's liability and damages for such payments." *Hoeflick v. Bradley*, 637 S.E.2d 832, 833 (Ga. Ct. App. 2006).  "This is because a tortfeasor is not allowed to benefit by its wrongful conduct or to mitigate its liability by collateral sources provided by others."  *Id.*

Blount's and Schmor's testimony did not violate the collateral source rule. Their testimony addressed the reasonableness and necessity of what Showan had paid for her discectomy.  Whether the expenses were "reasonable and necessary" is a critical inquiry under Georgia law.  *Kight*, 750 S.E.2d at 817.

For that reason, Defendants were properly allowed to argue that medical charges were unreasonably high.  They did not try to get any "credit" from the jury based on payments that Showan had received.  *See Hoeflick*, 637 S.E.2d at 833. Indeed, Showan, who is uninsured, says she received no such payments.  Showan's argument thus fundamentally misinterprets the collateral source rule.  She contends that the district court should have excluded evidence not of what *was* paid but of

12

what *might have been* paid had she obtained insurance.  Defendants were not trying to introduce such evidence.

Showan's Rule 403 argument also fails.  As noted above, Georgia law permits testimony regarding whether medical expenses are reasonable and necessary.  And to the extent Showan suggests that the testimony of Blount and Schmor was misleading, she could have offered her own expert testimony to disagree with or supplement their testimony.  If Showan believed the "volume discounts," as she describes them, did not apply to her, she could have attempted to convince the jury of that.  But the district court did not err in allowing Defendants' experts to give the jury a picture of what most doctors in the area charge for a discectomy.

Accordingly, the district court did not abuse its discretion in admitting the testimony of Blount and Schmor.

## IV.  MEDICAL RECORDS

Defendants also allegedly attacked another element of Showan's discectomy.  Showan asserts on appeal that "[d]uring trial, Defendants falsely argued that only one provider was present during the recorded procedure, which would imply that the associated bill charged well-over what the services should cost."  Showan does not point us to where Defendants made this one-provider argument, and Defendants dispute having made it.

13

Showan did not designate the surgical records in her pretrial exhibits, and Defendants accordingly objected to her introducing those records. Showan contends she should have been able to supplement the portion the Defendants introduced, *see* Fed. R. Evid. 106, so that Defendants' excerpt did not mislead the jury.

Because we remand for a new trial, and because that new trial will involve new pretrial exhibit designations, we need not resolve this dispute or opine on this issue.

## V. ADMONISHMENT DURING CLOSING ARGUMENT

### A. Showan Argues for Damages Measured by the Hour

Showan's counsel had the following exchange with the district court during his initial closing argument:

> [COUNSEL]: [W]hen you have pain like this in your neck, worse in lower back, in your wrist, when you have the headaches, that's an everyday thing, and it's certainly an every hour thing, and so we ask you to take that into consideration for her future, and, again, all caused by the Krispy Kreme truck collision. If it wasn't, we wouldn't be here.
> We ask for full justice and full compensation, and we want you to do it in a way that makes sense. Because she suffers pain all the time, what is the value of one hour? Well –
> THE COURT: You cannot make a unit of time argument.
> [COUNSEL]: Pardon me.
> THE COURT: You may not make a unit of time argument. Let's see, what is the value of one hour –
> [COUNSEL]: Yes.
> THE COURT: – You can't make an argument about what the value of one hour's worth of pain is. That is not permissible.

14

> [COUNSEL]: . . . May I argue this, your honor, to the jury, may I ask them to take into consideration that she's 52 years old, and under the annuity mortality table she has 27.22 years to live?
> THE COURT: Absolutely, that's absolutely legitimate.

During closing rebuttal argument, Showan's counsel again argued that jurors could "do the math" on Showan's pain and suffering down to the hour:

> We say and the judge will tell you it is your decision to decide what to do here. She's got to live with this for the rest of her life. What Krispy Kreme did to her, she's got to live with it for the rest of her life, and I do ask you not to pull some numbers out of a hat. I ask you to do math. You are allowed to do math as jurors and say how many days is it, how many hours is it. Try 525 dollars an hour,[7] see what you get.

Defendants' counsel objected, and the district court reiterated its instruction not to pursue that line of argument: "Yeah, you can't argue that the projection is that the plaintiff will suffer pain for every minute of every hour from now forward and do a multiplier based on that, that's just not allowable under the law."

### B. Whether Showan's Closing Argument Was Improper

Showan argues that Georgia law permits her to have made a "per diem argument" regarding damages and that the district court's admonishment was prejudicial, reversible error.

This circuit permits unit-of-time damages arguments. *Baron Tube Co. v. Transp. Ins. Co.*, 365 F.2d 858, 864 (5th Cir. 1966) (en banc). The "idea or worth

---

[7] On appeal, Showan suggests this number was supposed to be $5.25 per hour. Perhaps it was a misstatement at trial or a typographical error in the transcript.

15

of one year of pain may not be as understandable, real or persuasive to a juror as its equivalent, three hundred and sixty five days of pain and suffering." *Id.* at 865. "Whether the unit be cast in years or months, or weeks or days is a mere matter of degree, and there is little logic in prohibiting the discussion of large units of time in terms of their smaller mathematical equivalents." *Id.* But precautions are in order: the district "court must use care to the end that the argument will not inflame the jury and result in an excessive verdict." *Id*. at 864.[8] Ultimately, "*whether to allow such an argument* and the protective features to be employed are matters vested, in the end, in the sound discretion of the trial court." *Id.* at 864–65 (emphasis added).

Further, it is irrelevant that Georgia law allows unit-of-time arguments, *see Hardwick v. Price*, 152 S.E.2d 905, 907–08 (Ga. Ct. App. 1966), because we are bound by the holding that "the propriety of the [unit-of-time] argument is a federal question. It is a matter of federal trial procedure." *Baron Tube Co.*, 365 F.2d at 862. In sum, *Baron Tube Co.* leaves the question of whether to allow a unit-of-time argument wholly to the discretion of the district court.

The district court's statement that Showan's unit-of-time argument was "not allowable under the law" was incorrect, as the district court has complete discretion to disallow the argument or to allow it subject to safeguards. *See id.* at

---

[8] The court noted some potential safeguards, including notifying opposing counsel and the district court in advance; scrutinizing any charts used to avoid false impressions; and making clear to the jury that the argument is not evidence. *Baron Tube Co.*, 365 F.2d at 865.

16

864–65.  Because the district court erroneously concluded it had no discretion, it necessarily abused that discretion.  *Cf. LSLJ P'ship v. Frito-Lay, Inc.*, 920 F.2d 476, 479 (7th Cir. 1990) (A "trial court may abuse its discretion by failing to exercise its discretion." (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1316 (7th Cir. 1990)).  At the new trial, the district court should, under *Baron Tube Co.*, expressly exercise its discretion to allow or disallow any proffered unit-of-time damages argument.

## VI.  CLAIM FOR FUTURE LOST INCOME

### A.  The Pre-Jury Deliberation Grant of Judgment as a Matter of Law

At the close of evidence, Defendants moved for judgment as a matter of law on Showan's claim for future lost wages.  Defendants did not contest the wages Showan lost while being treated by her physicians; rather, they argued that she failed to demonstrate "reduction in ability to work" and thus is not entitled to future lost wages.  Although Showan's hours had been reduced, she was still working full time.  To explain the reduction in hours, Defendants noted that Showan (1) was aware that there was a nationwide reduction in hours (but with an accompanying increase in pay) at Walmart, and (2) "was never told by anyone that her reduction in hours was due to her accident or her injuries."  Showan's supervisor "was also unaware of any kind of medical restrictions" that prevented Showan from working full time.

17

Showan responded by emphasizing the permanence of her injury and reiterating her inability to work in the same manner as before the accident. She had to sit more frequently on the stool, and she could no longer work the regular checkout aisle. And again, although she conceded that she is working full time now, she argued, "now is not future lost wages." Further, because Showan will likely need surgery in the future (though it was disputed whether she would have had that surgery regardless of the accident), she will be out of work for that recovery.

The district court granted Defendants' motion for judgment as a matter of law. It explained, "I do agree that the evidence, to the extent there is any, concerning the plaintiff's inability to work in the future is entirely speculative."

## B.  Whether the Future Lost Wages Claim Should Have Gone to the Jury

Showan argues there was sufficient evidence to submit her future lost wages claim to the jury.

We review *de novo* the granting of a motion for judgment as a matter of law, "considering only the evidence that may properly be considered and the reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004). "Where 'no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue,' judgment as a matter of law is proper." *Id.* (quoting 12 Moore's

Federal Practice § 59.50[5] (3d ed. 1998)); *accord* Fed. R. Civ. P. 50(a)(1) (A district court may grant judgment as a matter of law on an issue if "a party has been fully heard on [the] issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.").

Under Georgia law, "[l]ost wages and earnings is recoverable where the evidence shows the amount of loss with reasonable certainty." *Olariu v. Marrero*, 549 S.E.2d 121, 124 (Ga. Ct. App. 2001). "Loss of future earnings is recoverable where evidence is presented on the permanency of plaintiff's injury, the effect of injury on earnings, and the monetary amount thereof." *Id.*

Even when viewed in the light most favorable to Showan, no reasonable jury could have awarded her lost future wages under Georgia law. Even if her injury is permanent, there is no evidence that the injury affected her ability to earn the same income as before she was injured. She is still able to work full time as a cashier at Walmart, even if her exact duties have changed. Moreover, Showan has failed to quantify the amount of her loss. It is true that "all future earnings or diminished future earnings are uncertain and difficult of ascertainment." *Michaels v. Kroger Co.*, 322 S.E.2d 903, 908 (Ga. Ct. App. 1984). But that does not absolve a plaintiff of the burden of putting forth *some* evidence of diminished earning capacity. Showan was required to provide "evidence to show [her] capacity to labor and earn

19

money has been permanently impaired." *Id.*; *see also Schriever v. Maddox*, 578 S.E.2d 210, 212 (Ga. Ct. App. 2003) ("We have repeatedly held that a court's instructing a jury on lost earnings as a category of recoverable damages is reversible error where the plaintiff has not presented evidence of the degree to which the injury reasonably affected the plaintiff's past and future income."). The relevant evidence in this case shows that Showan worked full time as a cashier before the accident and that she worked full time as a cashier after the accident. Admittedly, Showan must sit more frequently on a stool, but it is undisputed that she gets paid the same amount when she must sit. To the extent she will need future medical care that will cause her to take time off work, she similarly fails to demonstrate with reasonable certainty either the amount of time she will need to take off or the loss she will suffer as a result.

We find no Georgia case that would permit recovery of lost future wages under such tenuous and speculative circumstances. We therefore affirm the district court's grant of judgment as a matter of law regarding the claim for lost future wages.

## VII.  CLAIM FOR ATTORNEY'S FEES UNDER GEORGIA LAW

### A.  Defendants' Allegedly Frivolous Defenses

Showan argued to the district court that she was entitled to attorney's fees under Georgia law. She claimed that Defendants presented frivolous defenses and

20

acted in bad faith during the litigation. She maintains on appeal, for example, that Defendants raised the affirmative defenses of comparative negligence and assumption of risk—despite knowing Pressdee was completely at fault. Showan points to the corrective action report that attributed fault to Pressdee and to Krispy Kreme's insurance claim that found Showan was "0%" negligent—both of which were prepared within days of the accident. As Showan puts it, "It was not until the eve of trial, and after Plaintiff was forced to conduct discovery and mediation under Defendants' false pretenses, that Defendants moved to amend their Answers to recant these frivolous claims and defenses."

Georgia has codified its disfavor of frivolous claims and defenses in tort cases. Under O.C.G.A. § 9-11-68(e):[9]

> Upon motion by the prevailing party at the time that the verdict or judgment is rendered, the moving party may request that the finder of fact determine whether the opposing party presented a frivolous claim or defense. In such event, the court shall hold a separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted and to award damages, if any, against the party presenting such frivolous claims or defenses.

The statute also defines frivolous claims and defenses:

> Frivolous claims shall include, but are not limited to, the following:

---

[9] Section 9-11-68 is known as Georgia's "offer-of-settlement" statute. *See Richardson v. Locklyn*, 793 S.E.2d 640, 641 (Ga. Ct. App. 2016). Subsection (e), at issue here, covers "completely separate issues" from those in the rest of the section: "Subsections (a) through (d) govern offers of settlement, while subsection (e) governs damages for frivolous claims or defenses." *Id.* at 644.

(A) A claim, defense, or other position that lacks substantial justification or that is not made in good faith or that is made with malice or a wrongful purpose, as those terms are defined in Code Section 51-7-80;

(B) A claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position; and

(C) A claim, defense, or other position that was interposed for delay or harassment.

*Id.* § 9-11-68(e)(1).  Finally, the statute provides, "Damages awarded may include reasonable and necessary attorney's fees and expenses of litigation."  *Id.* § 9-11-68(e)(2).

Showan argued that § 9-11-68(e) applied in her case and that she was entitled to a separate hearing upon a favorable jury verdict.  Although the district court initially seemed to entertain the idea, it ultimately disagreed.  While the jury was deliberating, the court announced it would "dismiss" Showan's claim for fees.[10]  The district court concluded that "the evidence shows as a matter of law that the pleadings filed by the defendants were not frivolous" and that, in any event, Showan was not prejudiced.

### B.  Whether Federal Law or State Law Governs

---

[10] The district court was actually, in effect, preemptively denying the motion Showan would need to make under § 9-11-68(e).  Following the jury verdict, Showan made that motion, preserving it for appeal purposes.

22

Showan argues she should have been able to submit to the jury, upon its favorable verdict, her state-law claim for attorney's fees. But Defendants contend federal law—namely Rule 11 of the Federal Rules of Civil Procedure—conflicts with and overrides her claim. They say Showan is not entitled to a bifurcated hearing because, in federal court, the judge—not the finder of fact—determines frivolity.

"We [] review *de novo* a district court's determination and application of state law in a diversity case." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 n.11 (11th Cir. 2010).

When a state statute arguably conflicts with a Federal Rule of Civil Procedure, a federal court sitting in diversity jurisdiction will not apply the state statute if the federal rule "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (majority opinion). If a Federal Rule is "sufficiently broad to control the issue before the Court," *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980), "it governs . . . unless it exceeds statutory authorization" under the Rules Enabling Act or "Congress's rulemaking power" under the Constitution. *Shady Grove*, 559 U.S. at 398. "If no Federal Rule answers the question in dispute, we undertake an 'unguided *Erie*'[11] inquiry to decide whether to apply the state statute or federal

---

[11] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

23

common law." *Carbone v. Cable News Network*, 910 F.3d 1345, 1349 (11th Cir. 2018) (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).  That choice-of-law inquiry requires us to "apply *Erie* and its progeny to determine 'whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.'"  *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1358 (11th Cir. 2014) (quoting *Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001)).

## 1.  The Scopes of O.G.C.A § 9-11-68(e) and Rule 11 of the Federal Rules of Civil Procedure

Under the applicable framework, federal courts exercising diversity jurisdiction must apply O.C.G.A. § 9-11-68(e).  The question in dispute is whether Showan is entitled to compensatory damages, including attorney's fees and litigation expenses, for the injury she purportedly suffered as a result of Defendants' alleged frivolous litigation conduct.  Rule 11 does not answer this question.

Rule 11(b) provides:

By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

24

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on the belief or a lack of information.

If an attorney or unrepresented party breaches its duty under Rule 11(b) by filing a pleading that fails to comply with any of the substantive standards of that rule, Rule 11(c) kicks in.  The applicable sections of Rule 11(c) provide:

If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.
* * *
A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(1), (4).  Rule 11(c)(1) licenses the court to "impose an appropriate sanction" on an attorney or unrepresented party "after notice and a reasonable opportunity to respond."  "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  If an opposing party moved

25

for sanctions, Rule 11(c)(4) permits a court to issue "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses" as a sanction for a violation of Rule 11(b). *Id.* But the order must be "warranted for effective deterrence," and the attorney's fees and expenses must "directly result[] from the violation" of Rule 11(b). *Id.*

Rule 11 does not speak to whether a prevailing party is entitled to *compensatory damages* to remedy any injury inflicted on the prevailing party by the opposing party's frivolous or bad-faith claims and defenses. Instead, Rule 11 answers the question whether *punitive sanctions* should be imposed on an attorney or unrepresented party for filing a "pleading, written motion, or other paper" that violates the certification standards of Rule 11(b). In contrast, § 9-11-68(e) confers on a prevailing party a right to potential compensation for injuries sustained as a result of an opposing party's decision to raise "a frivolous claim or defense." O.C.G.A. § 9-11-68(e). It follows that § 9-11-68(e) does not "address the same subject" as Rule 11. *Cf. Shady Grove*, 559 U.S. at 402.

The remedy created by § 9-11-68(e) is more akin to a state-law claim for attorney's fees. We have said such claims are unequivocally substantive for *Erie* purposes. *See Trans Coastal Roofing Co., Inc. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002); *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) ("It is clear that statutes allowing for recovery of attorney's fees are substantive for

26

*Erie* purposes."). Yet, as we have noted, the statute does more than provide only for attorney's fees: it is designed to make whole, through "damages," a party that had to defend against a frivolous claim or overcome a frivolous defense. The finder of fact determines whether a claim or defense was frivolous. Indeed, § 9-11-68(e) creates a special tort-like remedy, providing for a "separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted and to award damages, if any, against the party presenting such frivolous claims or defenses." Although a party may assert this "tort" only within an existing proceeding, the statute's legal effect is still to create a substantive individual right under state law that does not purport to abrogate any procedural right conferred by the Federal Rules.

Nor can it be said that "the purposes underlying" Rule 11 "are sufficiently coextensive with the asserted purposes of the [Georgia] statute to indicate that the Rule occupies the statute's field of operation so as to preclude its application in federal diversity actions." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7 (1987). *Shady Grove* counsels against an "approach to determining whether state and federal rules conflict based on the subjective intentions of the state legislature," 559 U.S. at 404, so we are concerned only with "the purpose" that can be "derived from the text" of Rule 11 and § 9-11-68(e) in conducting this inquiry. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* § 2, 56 (2012). Rule 11 imposes a duty

27

on attorneys and unrepresented parties to certify that, to the best of their knowledge, their filings are or will be supported by the evidence and the law and are not made for any "improper purpose."  Fed. R. Civ. P. 11(b).  The rule allows courts to enforce this duty through appropriate sanctions, with the aim of deterring future misconduct.  *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and any award of "attorney's fees and other expenses" must be "warranted for effective deterrence.").  Sometimes Rule 11 sanctions are nonmonetary, and frequently they are penalties paid to the court rather than to the other party.  *Id.* ("The sanction may include nonmonetary directives."); Fed. R. Civ. P. 11(b) and (c) advisory committee's note to 1993 amendment ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty.").[12]

In contrast, § 9-11-68(e) compensates prevailing parties for litigation costs and other injuries endured because of an opposing party's decision to present meritless or bad-faith claims or defenses.  That compensatory purpose is why the

---

[12] The text of a given rule is what is authoritative.  Nevertheless, "[h]aving been prepared by a body of experts, the Notes are assuredly persuasive scholarly commentaries—ordinarily *the* most persuasive—concerning the meaning of the Rules."  *Tome v. United States*, 513 U.S. 150, 167 (1995) (Scalia, J., concurring in part and concurring in the judgment).

statute says that a prevailing party that has been forced to defend against a "frivolous claim or defense" is entitled to "damages" that are not capped at what is required to deter comparable litigation conduct.  *See* O.C.G.A. § 9-11-68(e).

It follows that Rule 11 and § 9-11-68(e) have categorically distinct purposes. Deterrence is forward-looking and concerned with preventing future violations of a rule.  Compensatory relief, in contrast, is backward-looking and aims "to place an injured party in the same position as it would have been in had there been no injury."  *Action Marine, Inc. v. Continental Carbon, Inc.*, 481 F.3d 1302, 1316 (11th Cir. 2007) (quoting *Home Ins. Co. v. N. River Ins. Co.*, 385 S.E.2d 736, 742 (Ga. 1989)).  Rule 11 is not designed to make the movant whole for any and all injuries sustained as a result of a frivolous filing, and any monetary sanctions one party happens to receive from the other are incidental to the rule's deterrent purpose.

Defendants focus on *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014), where we examined the relationship between Rule 11 and another Georgia statute, O.C.G.A. § 9-11-11.1(b) (1998).  Section 9-11-11.1 is "Georgia's anti-SLAPP [Strategic Lawsuits Against Public Participation] statute[, ] intended to protect its citizens from having their important First Amendment rights to free speech and to petition the government chilled by the threat of being dragged into onerous judicial proceedings by improper or abusive tort claims."  *Id.* at 1357.  At

29

the time of *Royalty Network*,[13] the statute required, for claims that could conceivably be related to a person's free-speech rights, that "both a plaintiff and plaintiff's counsel [] file a written verification certifying that the claim is well grounded in fact, is warranted under existing law, and . . . is not made for an improper purpose." 756 F.3d at 1354. Rule 11 requires counsel to sign a represented party's pleadings, but it does not require the represented party to do so. *See* Fed. R. Civ. P. 11(a). We thus concluded that § 9-11-11.1(b)'s "requirements for filing a complaint or pleading directly conflict with the procedure for filing a pleading specified in the federal rule, and the two may not peacefully co-exist or operate in the same case." 756 F.3d at 1359–60. Section 9-11-11.(b) governed the procedure for signing a pleading. But § 9-11-68(e) concerns something very different: a hearing on damages incurred as a result of litigating against frivolous claims, defenses, or positions. *Royalty Network* shines no light on this case.

Finally, Defendants point us to Rule 11's 21-day safe-harbor provision. That provision provides that a motion for sanctions under Rule 11 "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service [of the challenged document] or within another time the court sets." Fed.

---

[13] The statute was amended substantially in 2016. After this appeal was docketed, we decided the revised statute also conflicted with portions of the Federal Rules of Civil Procedure. *See generally Carbone v. Cable News Network*, 910 F.3d 1345 (2018).

30

R. Civ. P. 11(c)(2).  But the existence of this provision is irrelevant to our inquiry.  Only if the federal rules "answer[] the question in dispute," *Shady Grove*, 558 U.S. at 398, do we concern ourselves with the extent to which a state law imposes requirements different from the federal rules.  For the reasons we have articulated, Rule 11 does not control the dispute at issue.  We conclude that there is no conflict between Rule 11 and § 9-11-68(e).

## 2.  *Erie* Concerns

We now move to the second part of the *Hanna* test and examine *Erie*'s concerns about the potential for inequitable administration of justice and forum shopping.  *See Burke*, 252 F.3d at 1265.  Those concerns are acutely present here.  If we failed to recognize the right to a bifurcated hearing under § 9-11-68(e), a defendant who removed a Georgia diversity tort case would divest plaintiffs of their right under Georgia law to have the finder of fact examine alleged frivolity and to recover the damages to which the statute entitles them.  *Cf.* Fed. R. Civ. P. 11(d) advisory committee's note to 1993 amendment ("Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions.  It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards."); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975) ("[T]his Court [has] held that a state statute requiring an award of attorneys' fees should be applied in a case

31

removed from the state courts to the federal courts . . . .  It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts." (quoting *People of Sioux Cty. v. Nat'l Sur. Co.*, 276 U.S. 238, 243 (1928)).

\* \* \*

Ultimately, we find no conflict between Rule 11 and § 9-11-68(e).  They do not "address the same subject."  *Shady Grove*, 559 U.S. at 402.  Failure to allow for § 9-11-68(e) hearings would induce forum shopping by defendants seeking to avoid those hearings.  We therefore hold that O.C.G.A. § 9-11-68(e) is substantive law that applies when federal courts exercise their diversity jurisdiction in tort cases governed by Georgia law.  Because this case is such a case, the statute applies here.

## C.  Whether the District Court Should Have Held a Bifurcated Hearing

Having concluded that O.C.G.A. § 9-11-68(e) applies here, we next decide whether Showan was entitled to the hearing she requested.  We conclude she was so entitled.

Section 9-11-68(e) provides, "Upon motion by the prevailing party at the time that the verdict or judgment is rendered, the moving party may request that the finder of fact determine whether the opposing party presented a frivolous claim or defense." In other words, the prevailing party may move, at the time of the

32

verdict or entry of judgment, for the finder of fact determine the frivolity of the other side's claim or defenses.  "In such event, the court *shall* hold a separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted and to award damages, if any, against the party presenting such frivolous claims or defenses."  *Id.* (emphasis added).  The statute uses the permissive "may" when describing the prevailing party's ability to move for fees, but it uses the mandatory "shall" in describing the court's obligation to hold the bifurcated hearing upon the party's motion.  "The word 'shall' is ordinarily 'The language of command'.  And when the same Rule uses both 'may' and 'shall', the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory."  *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (citation omitted); *accord O'Donnell v. Durham*, 573 S.E.2d 23, 24 (Ga. 2002) ("'Shall' is generally construed as a word of mandatory import.").  A district court has no discretion to decline the prevailing party's request under § 9-11-68(e) if the party makes it.  The district court thus erred in denying Showan's motion.

Defendants contend any error was harmless, *see* Rule 61 of the Federal Rules of Civil Procedure,[14] because Showan failed to make any showing of

---

[14] "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."  Fed. R. Civ. P. 61.

33

frivolity.  In light of the mandatory language of the statute, we decline to comment on this contention.  Showan had a statutory entitlement to the hearing, and denying her that hearing affected her substantial rights.  Moreover, whether Showan demonstrated that Defendants acted frivolously is a matter for the finder of fact under Georgia law.

Defendants further contend that there is no need for an entirely new trial. They argue that "under Georgia law, attorney's fees are a distinct and ancillary award, determination of which should not disrupt a judgment on the merits."  But Defendants' argument proves too much.  Any award under § 9-11-68(e) is ancillary to the judgment precisely because it is based on the losing party's conduct during the course of the litigation that led to that judgment.  A new factfinder would be blind to that conduct.  Because the statute requires the prevailing party to move for a hearing "at the time the verdict or judgment is rendered," it plainly contemplates that arguments regarding frivolity belong before the *same* factfinder that renders the underlying verdict or judgment.

Nor are we persuaded by Defendants' citation to *Richardson v. Locklyn*, 793 S.E.2d 640 (Ga. Ct. App. 2016), where the court examined O.C.G.A. § 9-11-

---

"At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  *Id*.

34

68(d)[15] and concluded it could remand for a hearing only on attorney's fees rather than a new trial. 793 S.E.2d at 644. Fees under § 9-11-68(d) are awarded by the court; fees under § 9-11-68(e) are awarded by the finder of fact. That the same statute specifically differentiates between who awards fees in different circumstances serves only to strengthen our conclusion.

The district court erred in determining "as a matter of law" that the pleadings were not frivolous. Georgia has made clear that such a determination is for the finder of fact. It has also made clear that the prevailing party has a right to a hearing if it requests one. Because the statute requires the same factfinder at both the trial on the merits and the hearing on frivolity, Showan is entitled to a new trial and the opportunity, if she prevails again, to move for a hearing under § 9-11-68(e).

## VIII.  CONCLUSION

We **AFFIRM** in part, **VACATE** in part, and **REMAND** for a new trial consistent with this opinion.

---

[15] We discuss the substantive differences between the statutory subsections further in note 9.