[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15068
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-03103-ELR

RAMO SALKIC,

Plaintiff - Appellant,

versus

HEARTLAND EXPRESS, INC.,
ROBERT WALTON,

Defendants,

HEARTLAND EXPRESS, INC. OF IOWA,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 12, 2020)

Before MARTIN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Appellant Romo Salkic filed a lawsuit to recover for personal injuries he suffered as a result of a violent collision between his tractor-trailer and a tractor-trailer owned by Appellee Heartland Express, Inc. of Iowa ("Heartland"). Heartland removed the case to federal court based on diversity jurisdiction, and the case proceeded to trial by a jury. At trial, Heartland conceded that its driver was liable for the incident, so the only issue remaining for the jury was damages. Ultimately, the jury returned a verdict awarding Salkic damages in the amount of $157,000, substantially less than what he had sought. The district court entered judgment on the verdict, and Salkic now appeals, arguing that his case was harmed by two of the district court's evidentiary rulings. After careful review, we affirm.

## I.

First, Salkic contends that the district court erred in admitting testimony from his treating physician about the percentage of his laser-surgery patients who were involved in litigation, while also excluding the physician's explanation that the percentage was so high because insurance did not cover the procedure.

## A.

The relevant facts are these. After the collision, Salkic received treatment for back pain from Dr. Shahram Rezaiamiri. He incurred over $213,000 in medical expenses for visits and treatments, which included steroid injections, medial branch blocks, radiofrequency ablation, and laser spine surgery.

2

Salkic offered Dr. Rezaiamiri's testimony via video deposition, both as his treating physician and as an expert witness. Over Salkic's objection, the district court ruled that the jury could hear the following testimony:

Q. Okay. In the last two years, what percentage of these laser spine surgeries were for patients that were involved in personal-injury litigation?

A. Probably 90 percent.

Heartland advised that it wanted this testimony because, combined with evidence of the number of surgeries Dr. Rezaiamiri performed during that time, it "goes straight to his financial bias for how he treats his patients and for how he treated Mr. Salkic."

Salkic then asked to show the jury the remainder of Dr. Rezaiamiri's remarks on that issue to provide "context" and rebut the "impression that this is some sort of litigation-driven care." The "context" testimony is as follows:

Q. 90 percent of them?

A. Because insurance doesn't cover it.

Q. Okay.

A. So patients have to pay cash, and they don't want to pay cash or people don't have it.

Q. And so does insurance cover the laser spine surgery?

A. They—well, I don't know of any. I mean, the ones that we have, they don't.

Q. Okay. Are you aware of any that do cover laser spine surgery?

A.    There may be some that do, but not that I know of.

The district court excluded this "context" testimony, although it found the issue "close" and "dicey."  The court was concerned that permitting this testimony would open the door for Heartland to get into other issues related to insurance.  The court previously had granted Salkic's motion in limine to exclude "any evidence, argument or reference to insurance, collateral sources or discounted amounts paid for the medical care he received or amounts written off."  Further, the court found it unclear whether the only explanation for the 90 percent number was that patients "would have to pay cash," given that Dr. Rezaiamiri went on to testify that it was "more complicated" because insurance does cover some laser surgeries, just not the particular laser surgery at issue.

**B.**

We review the district court's evidentiary rulings for an abuse of discretion. *Ermini v. Scott*, 937 F.3d 1329, 1342 n.11 (11th Cir. 2019).  "[T]he abuse of discretion standard means that a district court has a range of choice." *United States v. Brown*, 415 F.3d 1257, 1265 (11th Cir. 2005).  And the size of that range for evidentiary issues is "significant," "which is to say we defer to its decisions to a considerable extent." *Id.*  We give this deference because "the district court's role in presiding over trial proceedings means the district court is in the best position to decide the matter," among other reasons. *Id.*  Nevertheless, "granting considerable

4

leeway is not the same thing as abdicating appellate responsibility," and we will find an abuse of discretion "where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *Id.* at 1266.

Evidence is relevant if it has "any tendency" to make a fact that is of consequence in determining the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

Here, the district court did not abuse its considerable discretion. Contrary to Salkic's argument, Dr. Rezaiamiri's "90 percent" remark—that 90 percent of the laser spine surgeries he performed in the last two years were for patients who were involved in personal-injury litigation—was relevant for two reasons.

First, it has a tendency to show that the medical expenses billed by Dr. Rezaiamiri may not have been "reasonable or necessary," which was a key issue at trial. *See Showan v. Pressdee*, 922 F.3d 1211, 1218 (11th Cir. 2019) (explaining that under Georgia law, which provides the substantive rules for this diversity case, "a tort victim is entitled to recover medical expenses arising from his injuries, including hospital charges, that [are] reasonable and necessary" (quotation marks omitted)). As Heartland argued in closing, the high percentage of laser-surgery

patients involved in personal-injury litigation, combined with evidence that Dr. Rezaiamiri had a lien against Salkic, suggested the doctor had a financial incentive to either bill excessively or to provide treatment that was not medically necessary.

Second, it has a tendency to show bias on the part of Dr. Rezaiamiri, who testified as an expert, in addition to testifying as Salkic's treating physician. *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). To be relevant, the evidence simply must have "'any tendency' to make bias more probable than it would be without the evidence." *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302 (11th Cir. 2018) (quoting Fed. R. Evid. 401(a)). That standard is met here. A jury might infer that Dr. Rezaiamiri was incentivized to provide more favorable testimony to Salkic because he stood to collect from successful personal-injury actions generally and Salkic's case in particular. *See id.* at 1302–03.

Nor was the district court required to exclude this testimony under Rule 403. "[E]xclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used sparingly and only after looking at the evidence in the light most favorable to its admission." *Id.* at 1303 (quotation marks omitted). Salkic claims that the "90 percent" remark, particularly without context, was subject to

6

misinterpretation by the jury in a way that was unfairly prejudicial to Salkic. But Salkic does not contend that Heartland misrepresented the statistic in its arguments to the jury, despite doing so in an earlier filing. And viewing the comment in the light most favorable to its admission, we cannot say that the potential the jury would misinterpret the statistic in a way that was unfairly prejudicial to Salkic was so substantial as to outweigh its probative value. *See id.*

Finally, the district court did not make a clear error of judgment in excluding the "context" testimony. *See Brown*, 415 F.3d at 1266. The court was justifiably concerned that permitting this additional testimony would open up issues related to insurance, which the court had excluded in a pretrial ruling at Salkic's request. Heartland had argued that admitting the "context" testimony would "open[] the door wide open for us to get into insurance." Moreover, as the court noted, Dr. Rezaiamiri's testimony was not clear that the sole reason for the 90 percent number was that patients "would have to pay cash," given that he went on to testify that it was "more complicated" because insurance does cover some laser surgeries. As a result, there was a potential that admitting the "context" testimony would touch on matters the court previously had excluded and would confuse the issues for the jury. While the court could have avoided these issues altogether by excluding the "90 percent" remark, the court was in the best position to evaluate this testimony and its

7

effect on the trial, and its decision to draw the line where it did fell within its considerable discretion.  *See Brown*, 415 F.3d at 1265.

## II.

Second, Salkic argues that the district court erred in allowing Heartland to present the testimony of an expert witness when, in Salkic's view, Heartland failed to comply with local rules governing timely disclosure of expert testimony.

## A.

In a pretrial motion in limine, Salkic moved to exclude, among other things, the expert testimony of Susan Garrison, Heartland's medical billing expert, for failure to comply with Northern District of Georgia Local Rule 26.2.  Salkic asserted that Heartland first disclosed Garrison several weeks before the close of discovery on December 12, 2018, but "failed to timely make [her] available for deposition," despite having Garrison's report in its possession "for more than a year."  Salkic argued that her testimony should be excluded because Heartland failed to make Garrison "available for deposition sufficiently early in the discovery period thereby eliminating Plaintiff's opportunity to potentially identify rebuttal experts."

In response, Heartland argued that Garrison had been timely disclosed.  It explained that it decided to disclose Garrison after Salkic disclosed Dr. Rezaiamiri's testimony on the reasonableness of Salkic's medical bills on August 30, 2018.  Further, according to Heartland, it disclosed Garrison, her report, and all related

information on October 19, 2018, nearly two months before the discovery deadline. Due to scheduling conflicts and the expert witnesses' availability, however, Garrison's deposition had to be pushed back until January 8, 2019. Heartland contended that any failure to disclose on time was harmless and justified, noting that it had offered to accommodate Salkic by agreeing to extend discovery or by not objecting to a late disclosure of a rebuttal expert witness.

The district court addressed this issue at a pretrial conference on October 17, 2019. After hearing argument from the parties, the court declined to exclude Garrison for the reasons given by Heartland's counsel.

**B.**

We review a district court's application of its local rules for an abuse of discretion. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009). To demonstrate an abuse of discretion, the plaintiff "bear[s] the burden of showing that the district court made a clear error of judgment." *Id.*

Rule 26, Fed. R. Civ. P., outlines disclosure requirements for expert testimony which "are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). Federal Rule 26 correlates with Northern District of Georgia Local Rule 26.2, "which mandates that expert opinions must be disclosed sufficiently early in the discovery period to allow the opposing party to react before the close of discovery."

9

*Mann*, 588 F.3d at 1310; *see* N.D. Ga. L.R. 26.2(C).[1]  Any party who fails to comply with Local Rule 26.2 "shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by Court order based upon a showing that the failure to comply was justified."  N.D. Ga. L.R. 26.2(C).

Here, the district court did not abuse its discretion.  Even if we assume Heartland failed to comply with Local Rule 26.2(C), the court reasonably concluded that Heartland's failure was justified for the reasons given by Heartland both at the pretrial conference and in its response to Salkic's motion in limine.  *See id.*

Salkic claims that Heartland's failure to timely make Garrison available for deposition was not justified because it had her opinions more than a year earlier.  But Heartland explained that it decided to disclose Garrison only after it received Dr. Rezaiarmiri's opinions on the reasonableness of Salkic's medical bills in late August 2018.  Moreover, Heartland disclosed Garrison's report in October 2018, two months before the close of discovery and more than a year before the trial.  Although there was a delay in scheduling her deposition, Salkic neither disputes the reasons offered by Heartland for that delay nor explains why it was unable to identify rebuttal

---

[1] Local Rule 26.2(C) states, in relevant part,

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

testimony or evidence either within the discovery period based on Garrison's report or, if a deposition was necessary, within a mutually agreed-upon extension of the discovery period, as Heartland had offered.

Without any suggestion of surprise or prejudice, and in light of Heartland's explanation for its actions, the district court did not make a clear error of judgment in concluding that exclusion under Local Rule 26.2 was not warranted. *See Mann*, 588 F.3d at 1302.

## III.

In sum, we affirm the judgment of the district court.

**AFFIRMED.**